THE WASHINGTON, ALEXANDRIA, AND GEORGETOWN STEAM PACKET COMPANY, PLAINTIFFS IN ERROR, *v.* FREDERICK E. SICKLES AND TRUMAN COOK.

Where the declaration contained two counts; viz. the first upon a special contract that the plaintiffs had placed a machine for saving fuel on board of the steamboat of the defendants, and were entitled to a certain portion of the savings; the second upon a *quantum meruit;* it was admissible to give in evidence by the plaintiffs the experiments of practical engineers to show the value of the machine. Evidence had previously been given, tending to prove the value in the mode pointed out in the contract, and the evidence in question tended not to contradict, but to corroborate it. It was therefore admissible under the first count, and clearly so under the second.

On the part of the defendants, the evidence of the president of the steamboat company was then given, denying the special contract alleged by the plaintiffs, and affirming a totally different one, namely, that, if the owners of the boat could not agree with the plaintiffs to purchase it, the latter were to take it away. The court should have instructed the jury, that, if they believed this evidence, they should find for the defendants.

The court below instructed the jury, that, if the president of the company, acting as its general agent, made the special contract with the plaintiffs, the company were bound by it, whether he communicated it to the company or not. This instruction was right. But the court erred in saying that the plaintiffs had a right to recover on their special count, if the machine was useful to the defendants, without regarding the stipulations of that contract as laid and proved, and the determination of the plaintiffs to adhere to it. Because, by the contract, the defendants are to use the machine during the continuance of the patent right; and as no time is pointed out for a settlement, a right of action did not accrue until the whole service had been performed.

Whether, if there had been a count in the declaration for the cost of the machine, and the jury had believed that the defendants had agreed to pay it as soon as it was earned, the plaintiffs might not recover that amount, or whether such a construction could be put on the contract as proved, are questions not before the court on this record, and upon which no opinion is expressed.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the District of Columbia, holden in and for the County of Washington.

It came up upon a bill of exceptions to the admission of certain evidence, and four bills of exceptions to refusals of the court below to grant certain prayers, all of which exceptions were taken by the defendants below (the plaintiffs in error here). But as two of the last-named bills of exceptions were not pressed in this court, it is not necessary to state them, or to state more of the case than is sufficient to show the points argued and decided by this court.

In March, 1846, Sickles and Cook brought an action against the Steam Packet Company. The cause of action is thus stated in the declaration : —

" Whereupon the said plaintiffs, by Joseph H. Bradley, their attorney, complain, for that whereas heretofore, to wit, on the first day of July, 1844, the said defendants, at the county aforesaid, being the owners of a certain steamboat called the Columbia, and running in the Potomac River and Chesapeake Bay, in consideration that the said plaintiffs, being the proprietors of a certain machine called ' Sickles's cut-off,' designed to effect a saving in the consumption of fuel for steam-engines, would place one of the said machines on the said steamboat Columbia, undertook and promised the said plaintiffs to apply the whole value of the saving of the fuel on board the said boat, which should be effected by the said machine, in the first place, to pay the cost and expenses of building the said machine, and putting the same on the said boat ; and thereafter, and after having paid the said costs and expenses, that they, the said defendants, would, so long as the said steamboat should continue to be employed by the said defendants, if the patent-right for the said machine should continue so long, pay to the said plaintiffs three fourths of the saving in fuel caused by said machine. And that the saving caused by the said machine, called the cut-off, on board the said boat, should be ascertained at any time the said plaintiffs should desire it, in the following manner, to wit : by taking equal quantities of wood, and using the same first with one and then with the other cut-off, (the defendants then having in use on board their said boat a machine called the throttle,) to show with which the boat would run the longest under the same circumstances. And thereupon the said plaintiffs, confiding in the said promises and undertakings of the said defendants, at great cost, to wit, at the cost of two hundred and fifty dollars, did erect and build, and place on the said steamboat Columbia, at the request of the defend-

ants, a machine called ' Sickles's cut-off'; which said machine, and the same hath ever since, to wit, from the 20th day of August, 1844, continually, to the beginning of this action, been used by the said defendants in and upon the said boat; and that, on the 19th day of August, 1845, at the county aforesaid, the said plaintiffs gave notice to the said defendants that they would, on the next day, that is to say, on the 20th day of August, 1845, if they desired, make the said experiment in the said agreement mentioned, to test the relative value of the said machine; and, for that purpose, that one of the said plaintiffs would go from Washington to Baltimore, in the said boat, on the said 20th of August, 1845, and make the said experiment; and the said defendants, by their president, did then and there assent thereto, and did direct the officers of the said boat, or some of them, to aid in conducting the said experiment; and the said plaintiffs in fact further say, that one of the said plaintiffs, to wit, the said Truman Cook, did, on the said 20th day of August, 1845, proceed in the said boat from the said city of Washington to Baltimore, in the State of Maryland, and did, on the said voyage, with the assistance of the officers of the said boat, make the said experiment, and did take two piles of wood of equal dimensions and under like circumstances; the pile employed in the use of the throttle cut-off was burned in two hours and seven minutes; and the pile used by the cut-off of the plaintiffs lasted three hours and fifteen minutes, showing a saving in favor of the latter of 34 and $\frac{175}{190}$ per cent., of all which the said defendants had due notice; whereby a great amount and value of fuel has been saved by the said defendants, to wit, the amount of twenty-five hundred dollars; and the said plaintiffs in fact say, they were and are entitled to recover of and from the said defendants, out of the said sum of money, as well the said sum of two hundred and fifty dollars, as and for the costs and expenses of erecting and building the said machine and placing the same on the said steamboat, as also the further sum of sixteen hundred and eighty dollars and fifty cents, being three fourths of the said savings within said period of time after the said machine was put in operation on the said boat, and while the same was used by the said defendants to the time of the bringing this suit; and being so entitled, the said plaintiffs, to wit, on the day and year aforesaid, and often afterwards, at the county aforesaid, demanded the whole of the said two sums of money, to wit, the sum of nineteen hundred and thirty-seven dollars and fifty cents, of and from the said defendants, and the said defendants utterly neglected and refused to pay the same, or any part thereof, to the

said plaintiffs, and still refuse, to the damage of the plaintiffs four thousand dollars; and therefore they sue.

JOSEPH H. BRADLEY, *for Plaintiffs.*

"Add a count for putting the machine on the boat at the request of the defendants, with a *quantum meruit.*"

JOSEPH H. BRADLEY, *for Plaintiffs.*"

The defendants pleaded *non assumpsit,* upon which issue was joined, and in March, 1847, the cause came on for trial.

The following is the evidence offered by the plaintiffs, which, being objected to by the defendants but admitted by the court, formed the subject of the exception to evidence.

"On the trial of this cause, the plaintiffs, to maintain the issue on their part joined, offered and gave evidence tending to show that, on or about the 18th day of June, 1844, at the county aforesaid, the said plaintiffs being the owners of the patent right to a certain machine called a cut-off, of which the said Frederick E. Sickles was the inventor, and the said defendants being the owners of the steamboat called the Columbia, on which they had in use a certain machine called the throttle cut-off, the object of both of said machines being to save the consumption of fuel in the use of steam-engines, the said plaintiffs made and entered into a certain contract with William Gunton, the president of the steamboat company, and the general agent thereof, whereby it was agreed that the said plaintiffs should construct and place on board the said steamboat one of their said machines at their own cost and expense; that the same should be tried, and, if it produced any saving, that the cost of putting the said machine in operation on board the said boat, not to exceed two hundred and fifty dollars, should be first paid out of the savings of fuel effected by the said machine; that the said machine should be used by the defendants during the continuance of the patent, if the said boat should last so long; and, after the payment of the said costs and expenses of putting the said machine in operation on board the said boat, the savings caused thereby, in the consumption of fuel, should be divided between the said plaintiffs and defendants in the proportion of one fourth to the defendants and three fourths to the plaintiffs; and, in order to ascertain the amount of such savings, an experimental trial should be made at any time the plaintiffs should direct it, after the said machine was in successful operation, in the following mode: Two piles of wood should be taken of equal dimensions; one pile should be used with one of the cut-offs, and the other pile with the other cut-off, under like circumstances, and the length of time required in the consumption of the said

piles of wood, respectively, should be taken as the evidence of the difference in the amount of savings in the one over the other; and if the said machine produced no saving, it was to be taken off, and the boat restored to its former condition, at the expense of the plaintiffs.

"That the said contract was wholly in parol, and, within three days after it was made, the plaintiffs entered into a contract in writing with T. W. and R. C. Smith, of Alexandria, by the said plaintiffs, as follows : (copied in record ;) and the said defendants caused their said boat to lie at Alexandria to have the said machine fitted to her engine ; that the said T. W. and R. C. Smith proceeded with all convenient despatch to make the said machine, and put the same on board the said boat, at the cost of $242; that the same was completed and placed on board the said boat, and in complete action, on the 9th day of November, 1844, with the knowledge of the defendants, and that the same was continually thereafter, to the bringing of this suit, used by the said defendants on board the said boat.

"That, on the 19th day of August, 1844, the said Truman Cook, one of the said plaintiffs, gave notice, on board the said boat, to the said defendants, by William Gunton, president as aforesaid, that they desired on the next day, the same being the regular day for the passage of the said boat from the city of Washington to Baltimore, to go on the said trip and make the experiment, provided by their said contract, to ascertain the saving caused by the said machine ; and the said William Gunton, president as aforesaid, directed the officers of the said boat, or one of them, to take care that the said Cook did not throw sand in his eyes ; and on the said 20th day of August, 1844, the said Cook, one of said plaintiffs, did in fact go from the city of Washington to Baltimore on board the said boat, and the said experiment was in fact made, under the superintendence of the officers of said boat on behalf of said defendants, and by the said Cook on behalf of said plaintiffs, and the whole was, at the request of plaintiffs, carefully observed and noted by Captain Job Carson, for many years mate and captain of a steamboat, and the result of the said experiment was, that the said machine of said plaintiffs caused a saving of fuel, over and above the said 'throttle cut-off,' of $34\frac{115}{1000}$ per cent., and full, minute, and accurate minutes of the said experiment, and of the result thereof, were taken and made in writing by the officers of the said boat, or one of them ; that the average consumption of wood on her said trip to Baltimore was      cords, and on her trip from Baltimore was      cords, and the average price of wood, during the period she ran, from the 9th of November, 1844, to the bringing

of this suit, was $      , and, estimating the saving by the said machine at one third, it amounted to $      up to the impetration of the writ in this case.

" The plaintiffs further gave evidence to show, by practical and scientific engineers and builders of steam-engines, that the said experiment was the only mode by which the said savings could be ascertained with any degree of certainty; that it had been resorted to and tried by them; and one of them further proved, that, on the experiment conducted by him to test the difference between ' Sickles's cut-off' and the ' throttle cut-off,' in a large steamboat belonging to Baltimore, and having an engine of the same construction as that on board the Columbia, the saving of the former over the latter was 42 per cent.; and they further proved that they were acquainted with both of the said machines, both theoretically and practically, and that no engineer would hesitate to say that ' Sickles's cut-off' was far superior to the throttle, and to any other with which they were acquainted.

" They further gave evidence to show that the said machine had been applied by the plaintiffs to four other steamboats belonging to the port of the city of Washington, and the saving of fuel caused thereby ranged from 18 to 33 per cent. on board the said boats respectively, and that the saving could not be ascertained by the amount of wood actually consumed without knowing and estimating the condition of the hull, and engine, and machinery, the state of the weather, the water, the freight, and the speed of the boat; and the only test was the experiment aforesaid, or one conducted on scientific principles which would give a proximate result.

" To introduction of which said evidence by practical and scientific engineers and others, builders of steam-engines, tending to show the operation of the said cut-off, and the savings resulting therefrom on other boats, the defendants, by their counsel, objected, because the same was inapplicable to the issue on the first count in the plaintiffs' declaration, and that the same could not be offered on the general counts, unless the plaintiffs abandoned the first.

" Which objection the court overruled, and allowed the said evidence to go to the jury; to which ruling of the court the defendants, by their counsel, excepted, and prayed that this their bill of exceptions may be signed and sealed; which is done this 25th day of March, 1847.

JAS. S. MORSELL,      [SEAL.]
JAS. DUNLOP.          [SEAL.]"

The defendants then offered evidence which is all incorpo-

rated into the bill of exceptions; but the following is that part upon which the prayer to the court below rested, involving the point which was argued in this court.

" The defendants, to support the issue on their part, called William Gunton, late president of the defendants' company, who being first sworn on his *voire dire*, stated that he had resigned the office of president of said company, and sold and transferred all the stock he held therein, and that he was in no way interested in the event of this suit between the said plaintiffs and the defendants; and the said witness, being sworn in chief, testified that he did not, as president of said company, or otherwise, make with the said plaintiffs the contract for the use of the cut-off called Sickles's cut-off, on board the defendants' steamboat called the Columbia, as the same is set forth in the first count in the plaintiffs' declaration; that some time in the spring of the year 1844 he first met with Truman Cook, one of the plaintiffs, and after having conversed several times with the said Cook on the subject of the application of the said cut-off to the engine on board the said boat, the said Cook stated that he was very desirous to bring the cut-off to the favorable notice of the officers of the government, with the view of introducing the same into use on board the national steamships, and other steam-vessels sailing on the waters of the River Potomac and the Chesapeake Bay; that he, as president of the defendants' company, agreed with the said Cook that he might place, at his own expense, the said cut-off on the engine of the said boat, and that if, on trial of the same on board the said boat, the said cut-off should be approved of, and the defendants should wish to purchase the same, the terms of such purchase should be afterwards determined on between the said parties; but if the said cut-off should not be approved of, or the terms proposed by said Cook for the use of the same by the said defendants on their said boat should be such that the said defendants could not accede thereto, the said Cook was to take the said cut-off from the said boat at his own expense, and restore the engine on the said boat to the same condition in which it was before the application of the said cut-off thereto; that the said cut-off was placed on the said engine pursuant to such last-mentioned agreement, and not in pursuance of any such agreement as is mentioned in the first count of the plaintiffs' declaration; that afterwards, and when the witness, still being president of defendants' said company, had had an opportunity to form some idea of the value of the said cut-off, he conversed with said Cook respecting the terms on which the same might be purchased for the use of the defendants on board the said boat, and the said Cook informed

36 *

the said witness that the defendants should have the use of the said machine on as favorable terms as the same had been disposed of to the owners of the steamboat Augusta, or any other steamboat, but did not then, or at any other time; inform the witness at what price the same had been sold to the said steamboat Augusta, or any other steamboat, or make any such definite proposition for the sale of the said machine to the defendants as would enable him to lay the same before the board of directors of the said company for their approval; and that the defendants have at no time refused the said Cook or the plaintiffs permission to remove the same from the engine on board the said boat, and restore the said engine to its former condition."

The prayer to the Circuit Court, founded on this evidence, was as follows: —

" Whereupon the defendants, by their counsel, prayed the court to instruct the jury, that if the jury believe, from the evidence, that the defendants agreed with the plaintiffs that they, the said plaintiffs, might, at their own expense, place the cut-off, called Sickles's cut-off, on the engine of the defendants' boat, called the Columbia, that they, the said plaintiffs, might exhibit the qualities and usefulness of the said machine to the public, and thereby facilitate the introduction of the same into use on board the national steam-ships, and other steam-vessels sailing on the waters of the Potomac River and the Chesapeake Bay; and that if, on the trial of the same on board the Columbia, the said cut-off should be approved of, and the defendants should wish to purchase the same, the terms of said purchase should be afterwards determined on between the said parties; but if the said cut-off should not be approved of, or the terms proposed by the plaintiffs to the defendants, for the use thereof, should be such that the said defendants could not accede thereto, the said plaintiffs were to take the said cut-off from the said boat at their own expense, and reinstate the boat and her engine in the same condition in which she was before the application of the said cut-off thereto; and that the said cut-off was placed on the said boat pursuant to said agreement and permission as aforesaid, and not pursuant to any such contract as is set out in the first count in the plaintiffs' declaration; and that the said plaintiffs have made no definite proposition to the said defendants for the sale and use of the said cut-off, and have not been refused permission by the defendants to remove the same from their said boat, then the plaintiffs are not entitled to recover in this action, although the jury should believe from the evidence that the said machine was approved of, and

has been used by, the said defendants; which instruction the court refused to give, there being only two judges on the bench, and they being divided in opinion on said instruction; to which refusal the defendants, by their counsel, excepted, and prayed the court that this their bill of exceptions may be signed and sealed, which is done, this 25th day of May, 1847.

JAMES S. MORSELL, [SEAL.]

JAMES DUNLOP.    [SEAL.] "

Amongst the evidence brought forward by the defendants, were the two following letters, which are inserted here because they are remarked upon by the court in the decision of the remaining exception.

### W. Gunton to Sickles & Cook.

" As I am, week after week, annoyed by warrants, under a pretended contract never entered into by me, respecting the cut-off placed under your direction on the steamer Columbia, and as I have repeatedly explained in writing, both to Messrs. T. W. and R. C. Smith, of Alexandria, and Mr. A. T. Smith, of this city, your agent or attorney, what the understanding between Mr. Cook and myself was in relation to the subject, and have expressed my willingness to comply therewith, I hereby give you notice, that unless you, within ten days from this date, remove the aforesaid cut-off from the Columbia, and replace, agreeably to that understanding, her machinery in the same condition in which it was immediately before the cut-off was applied thereto, I shall promptly thereafter cause the work to be done at your expense, and hold you liable for the same, in addition to the amount of expense incurred and loss sustained, by reason of the detentions of the Columbia, mentioned in my letters to your agent, Mr. A. T. Smith, before alluded to.

W. GUNTON, *President.*

" *Washington City,* 14*th April,* 1841.

" MESSRS. SICKLES & COOK."

### Reply to the above.

" DR. WILLIAM GUNTON, *President :*—

" We have received your note of the 14th instant, and hasten to reply to it, to avoid any future misapprehension on your part of the positions we respectively hold. You have chosen to make terms entirely different from those under which we contracted with you; have refused to execute your contract with us; have driven us to the necessity of a suit; and we are now resolved to bring the matter to an issue.

" You complain that you are annoyed by warrants. It is your own fault. You say that you have repeatedly [stated] to Messrs. T. W. and R. C. Smith, of Alexandria, and Mr. A. T. Smith, of this city, what the understanding between Mr. Cook and yourself was in relation to this subject, and have expressed yourself willing to comply therewith. We have, as often as occasion and opportunity offered, stated to you, in the plainest terms, that your representations thus made were not the terms of our contract, and have as clearly and distinctly stated to you what that contract was. We now repeat it. We undertook to put Sickles's cut-off on the. engine of the steamer Columbia, and offered to receive $1,000 for the right to use ·it. You, seeming to doubt the importance of the invention, declined that offer ; and we then offered to put the cut-off on, taking as a compensation for its use the value of three fourths of the fuel saved by its use, deducting from the first savings $250 for the construction of the machine, the savings to be ascertained by either of us by experiments with our cut-off and the old one attached to the engine of the Columbia, and you were to continue the use of our cut-off, provided we made it work well, so long as the boat continued to belong to your company. · These terms you accepted in the most unequivocal manner. We employed the Messrs. Smith to construct the machine. This was all they had. to do with it. They did make it, and it was applied, and has operated successfully. Persons were directed on board the boat to make accurate observations of the saving. It was found to be far greater than you had any idea of. We asked for compensation, and you denied the contract. Your own acts have compelled us to bring suit; and, in order to bring the matter to a close after that suit was brought, we took out a warrant against your company, so that either party might, by appeal, bring the question at once before the court for judicial decision. These are resisted on technical grounds, and now you give us notice to remove the cut-off. However much we might be disposed to avoid litigation, and to terminate all controversy by an amicable adjustment, the course you have taken has determined us, and we now give you notice that we will not only not interfere with the cut-off on board the Columbia, and hereby protest against your interfering with it, but we will every week bring an action to recover the amount of saving coming to us on the terms of our contract with you. Until we can get a judicial decision in the matter, you must choose for yourself.

SICKLES & 'COOK.

" *Washington,* 15*th April,* 1846."

The remaining prayer to the Circuit Court was as follows :—

" The defendants, by their counsel, further prayed the court to instruct the jury, that if the jury believe, from the evidence, that the contract set out in the first count of the declaration, and alleged to have been made by the plaintiffs and William Gunton, the president of the defendants' said company, was never authorized by a board or quorum of the directors of said company, as provided by their charter of incorporation, and was never sanctioned or approved of by said board or quorum of the said directors, and that the said William Gunton, in making such contract with the plaintiffs, if the jury believe the same to have been made by him, did not act within the scope of his authority as such president, then the said contract is void as respects the said defendants, and the said plaintiffs are not entitled to recover under the said first count in their declaration ; which instruction the court refused, but granted the same, with the following modification : but if, from the evidence, the jury shall find that William Gunton, the president of the defendants' company, and acting as their general agent, made with the plaintiffs the contract set out in the first count of the said declaration, and that the plaintiffs, under the said contract, put the said machine on the defendants' boat, and the same was used by the defendants at the time and times mentioned in the said count, and that the same was beneficial to the defendants, then the plaintiffs are entitled to recover on the said first count, notwithstanding the jury shall find that the terms of the said contract were not communicated to the defendants, and the said William Gunton reported to the said defendants a different contract ; to which refusal of the said instruction, and modification thereof, the defendants, by their counsel, excepted, and prayed that this their bill of exceptions may be signed and sealed, which is done this 25th day of May, 1847.

JAMES S. MORSELL, [SEAL.]
JAMES DUNLOP. [SEAL.] "

The jury found a verdict for the plaintiffs, and assessed the damages at $ 1,800, with interest from the 9th of November, 1845. A writ of error brought these several rulings of the Circuit Court before this court for revision.

It was argued by *Mr. Lawrence*, for the plaintiffs in error, and by *Mr. Lee* and *Mr. Bradley*, for the defendants in error.

The argument on behalf of the plaintiffs in error, with respect to the admissibility of the evidence, was as follows :—

1st. The same was inapplicable to the issue on the first count in the plaintiffs' declaration.

2d. That the same could not be offered on the general count unless the plaintiffs abandoned the first.

The plaintiffs in error insist that the court erred in allowing the evidence objected to by them to go to the jury :—

· 1st. Because it was in no way applicable to the issue on the special count in the plaintiffs' declaration ; it did not tend to prove any one of the allegations contained.in that count, and was therefore irrelevant and collateral.

The plaintiffs allege that a special mode of testing the value of their machine, in contrast with that previously used on board the defendants' boat, was agreed upon by the parties, and constituted part of their contract; the experiment was, as they allege, to be made on board the Columbia. It was therefore wholly immaterial to the point in issue on the first or special count what had been the result of experiments made on board steamboats in Baltimore or Washington ; the defendants had no notice of such experiments, were not present at them, and ought not to be affected by them.

Neither was it proper to give in evidence the opinion of engineers or steamboat-builders, however well informed as to the relative value of the two machines, particularly as the plaintiffs allege a special mode of ascertaining the difference in value had been agreed on by the parties in their alleged contract.

It is a familiar rule of evidence, that it must correspond with the allegations in the pleadings of the party who offers it. 1 Greenleaf on Evidence, §§ 51 and 52.

This rule excludes all evidence of collateral facts ; the admission of evidence of that character tends to divert the minds of the jury, to excite prejudice, and mislead them ; the adverse party is taken by surprise, and cannot be prepared to rebut it.

Thus, where the issue between a landlord and his tenant was whether rent was payable quarterly or half-yearly, evidence of the mode in which other tenants of the same landlord paid their rent was held by Lord Kenyon inadmissible. Peake's Cases, 95.

So the opinions of engineers, and the results of experiments on other boats, ought not to have been allowed.

2dly. This evidence was not admissible under the *quantum meruit* count.

Where there is an express contract, and a stipulated mode of compensation, the party rendering the services cannot waive the contract, and resort to an action on a *quantum meruit*, or an implied assumpsit. Champlin *v.* Butler, 18 Johns. 169.

Where the special agreement subsists in full force, the plain-

tiff cannot recover under the common counts, but the remedy is on the contract. Buller's N. P. 139; Raymond v. Bearnard, 12 Johns. 274; Jennings v. Camp, 13 Johns. 94; Clarke v. Smith, 14 Johns. 326; Wood v. Edwards, 19 Johns. 205; Perkins v. Hart's Executor, 11 Wheat. 237.

In the case before the court, the contract was subsisting and continuing; it was to last as long as the defendants should continue to employ the boat Columbia, if the patent for the machine continued so long. The plaintiffs had declared upon it as a subsisting contract. The *quantum meruit* count was for the same subject-matter as the special contract.

In the case of Cooke v. Munstone, 1 Bos. & Pull. N. R. 354, the declaration contained a count on a special contract, and a count for money had and received to the use of the plaintiff; the plaintiff failed to prove the contract laid, but proved another variant from it; he claimed to recover on his common counts; the court decided that the plaintiff could not proceed on the common counts. The court said, " The cases in which the plaintiff has been allowed to proceed on these counts are those in which the special contract is put altogether out of the case; it would be very strange to allow the plaintiffs to recover on the general *indebitatus assumpsit*, and still leave him to his right to recover for non-performance of his special contract; it is said he has a right to proceed at the same time on the special and on the general count, but the cases only warrant a permission to resort to the latter when the former has failed altogether. In this case, if we were to allow the plaintiff to go into the evidence he offered, it would amount to saying that there was no evidence of a subsisting special agreement, when in truth there was such evidence."

In Clarke v. Smith, 14 Johns. 326, the declaration contained a count on a special agreement, and the common counts relative to the same subject-matter. The plaintiff, at the trial, proceeded to give evidence under the common counts; the witness, on cross-examination, said there was a written contract between the parties, under which the work was done; objection was then made to the plaintiff's giving evidence under the common counts, which was overruled by the court.

On appeal, this was held to be error, and it was decided, that whenever the special contract is still subsisting, and no act done or omitted by the one party which would authorize the other to consider the contract rescinded, the remedy must be on the special contract, which principle will be found to run through all the cases.

While the contract is still subsisting, part performance will

not entitle the plaintiff to resort to the common counts to recover the value of that which he has done in part fulfilment of the contract.

If the plaintiffs could not resort to the common count, they ought not to have been allowed, the defendants objecting, to give evidence applicable only to that count. There was conflicting testimony respecting the value of the machine, and the minds of the jury must have been affected by the testimony thus improperly offered.

With respect to the exception founded on the refusal of the court to grant the first prayer made by the defendants below, the error alleged was this.

If the plaintiffs acted under a special agreement with the defendants in putting the said machine on the defendants' boat, and there was any failure on the part of the defendants to comply therewith in any respect, the proper and only remedy for the plaintiffs was by action on that special agreement.

Whether the agreement was such as the plaintiffs pretended, or such as the defendants pretended, while such agreement was subsisting, there could be no remedy for the plaintiffs on the common counts.

If the agreement was such as the plaintiffs have set out in the first count in their declaration, and the jury believed the evidence introduced to prove the same by the plaintiffs, then they were entitled to recover on that count.

But if the jury gave greater credence and weight to the evidence offered by the defendants to sustain the issue on their part, and believed the contract to be proved to be such as the defendants set up, then the plaintiffs were not entitled to recover;—

1st. Because of their failure to prove the contract set out by them.

2d. Because a different contract was proved by the defendants, of which there was no breach on their part alleged or proved, and which was still subsisting.

It is clear from the terms of the agreement, as shown by the defendants' evidence, that the machine was not put on the defendants' boat to be used by them under a contract of purchase, nor was the use thereof to be paid for by the defendants; it was put on board by permission of the defendants at the request of the plaintiffs, and for their advantage; the plaintiffs were at liberty to remove it at their pleasure. If the defendants should wish to acquire the right to use it permanently, it was to be made the subject of a future agreement.

If the jury believed this, and certainly the defendants' evidence tended to prove it, and no subsequent contract was alleged or

proved, and no offer by the plaintiffs to remove the machine from the boat, and refusal by the defendants to allow it, either alleged or proved, then the plaintiffs made out no case against the defendants; and, when asked by the defendants, it was the duty of the court so to tell the jury, and their refusal was an error.

The court seem to have been of opinion, that, notwithstanding the jury might believe, from the evidence, that the defendants did not contract with the plaintiffs either for the purchase or use of the machine, and that the same was put on board the plaintiffs' boat for their own benefit and advantage with the public; yet, as the same had been used by the defendants, and they had derived benefit therefrom, they ought to pay for it; and, if they refused to do so, the plaintiffs had a right to recover for such use.

Respecting the last prayer, the plaintiffs in error contend that the court erred in refusing the instruction as originally asked for, and in giving the same with said modification.

In the third section of defendants' said charter it is provided that the affairs of the company shall be conducted by four directors and a president; that two directors and the president shall form a quorum for transacting all the business of the company.

In the fifth section it is provided that the president and directors shall have full power to use, employ, and dispose of the funds and property of the company for the interest and benefit of the stockholders, and agreeably to the objects of the said act of incorporation.

The president of the company has, as such, no power to bind the company by contract; he may be authorized to act as the *special agent* of the company in some particular case, or *generally* in the performance of some prescribed duties. His power as agent of the company cannot be without scope or limit. An act of the board authorizing the president to act as *universal agent*, with unlimited authority to act for, and dispose of, the property of the company, would be a violation of the charter, and void.

If it be assumed that Mr. Gunton made with the plaintiffs the contract set out in the declaration, he acted in doing so as the president or agent of the company, and within some supposed limits. If the act done was within the scope of his authority, the company was bound by it. If, however, the act done was not within the scope of his authority, then the company was not bound by it.

It is not contended that third persons are to be affected by the private restrictions which a principal may impose on his

agent; it is conceded that, whenever an act is within the scope of the agent's authority, the principal is bound. Story on the Law of Agency, § 127.

In the instruction which the court refused, they were asked to say to the jury that, if they believed, from the evidence, that Mr. Gunton, in making the said contract, did not act within the scope of his authority as such president, and that the said contract was never authorized or sanctioned by the board of directors, then the same was void as respects the defendants.

In refusing this instruction the court left the jury to understand that the contract was binding on the defendants; notwithstanding it was not within the scope of Mr. Gunton's authority, as president, and so agent of the company, to make it; and the same had never been authorized or sanctioned by the board of directors.

This ruling on the part of the court, as the subsequent modification shows, had its basis in an opinion held by them that the defendants, having had the use of the machine, if they were benefited thereby, were, at all events, bound to pay for it.

The subsequent granting of this instruction, with the modification attached to it by the court, magnified the error of their first refusal.

The plain and fair construction of the whole is this: That if the jury believe Mr. Gunton, in making said contract, acted beyond the scope of his authority, as president of the company, and that the contract was never authorized or sanctioned by the board of directors, the contract was void; yet if he, being the president of the defendants' company, and acting as their general agent, did make the said contract, even if he did exceed his authority, and the plaintiffs, under said contract, put their machine on the defendants' boat, and it was used by the defendants, and was beneficial to them, then the plaintiffs are entitled to recover under the special count in the declaration; that is, they are entitled to recover for the beneficial use on the first or special count in the declaration.

One of the terms of the contract, as set out in the declaration, is, that the whole of the value of the savings which should be effected by the plaintiffs' machine over the old throttle cut-off should be applied to pay for the cost of the machine, &c., and after that three fourths of the savings thus effected should be paid to the plaintiff, and the amount was to be ascertained in a certain way.

The instructions given by the court to the jury do not limit the right of the plaintiffs to recover according to the terms of their alleged agreement, but they affirm their right to recover if the jury believed the machine was used, and was beneficial

to the plaintiffs. The court say they may recover for the beneficial use, and that under the special contract. The jury are not told that the beneficial use of the plaintiffs' machine must, in their judgment, exceed that of the old throttle cut-off. It is sufficient, in the judgment of the court, that the defendants had used the machine, and that that use was beneficial, to authorize the plaintiffs to recover to the extent of the value of such use.

If the ruling of the court had been, that, if the jury believed that Mr. Gunton in making the contract exceeded his authority, and therefore that the contract was void as against the defendants, in the absence of any contract binding the defendants the plaintiffs might recover under the common count, if they believed the defendants used the plaintiffs' machine, and it was beneficial to them, there would have been no error in their instruction; but such is not the ruling of the court. They say, that if the machine was put on the boat under the special contract, and was used by the defendants and proved beneficial, the plaintiffs may recover the value of such use on the count on that contract.

The following authorities were relied on : —

Bank of Columbia *v.* Patterson's Administrator, 7 Cranch, 306 ; Head and Amory *v.* Providence Insurance Co., 2 Cranch, 127 ; Fleckner *v.* Bank of U. States, 8 Wheat. 338 ; Bank of U. States *v.* Dandridge, 12 Wheat. 64.

The counsel for the defendants in error, with respect to the admissibility of the evidence, conceded that the evidence was not admissible under the first count in the declaration, and that it was not offered as applicable to that count, but contended that it was clearly admissible under the second count. The propriety of joining a count on the special agreement with a common count cannot be doubted. It is the usual and proper course. Arch. Civ. Pl. 174.

Where there is a special agreement, the rules are, —

1st. So long as the contract is ~ecutory, to declare specially ; when executed, and the payment is to be in money, the general counts may be used. Streeter *v.* Horlock, 1 Bing. 34, 37 ; Study *v.* Sanders, 5 Barn. & Cres. 628 ; Tuttle *v.* Mayo, 7 Johns. 132 ; Robertson *v.* Lynch, 18 Johns. 451.

2d. Where the contract has been partly performed, and has been abandoned by mutual consent, or rescinded by some act of defendant, plaintiff may use the common counts. Robson *v.* Godfrey, 1 Stark. 275.

3d. Where work has been done under a special agreement, but not in the time or manner stipulated, has been accepted by and is beneficial to defendant, the common counts may be

resorted to. Keck's case, Bull. N. P. 139; Burn *v.* Miller, 4 Taunt. 745; Streeter *v.* Horlock, 1 Bing. 34; Jewell *v.* Schroeppel, 4 Cow. 564; Taft *v.* Montague, 14 Mass. 282.

These are general principles now universally admitted.

But it is supposed the plaintiffs were bound to waive or abandon their first count before they could resort to the common count. Is this so?

It was contested, and they had a right to give evidence as to both. They were both good counts. It was competent for them to have the verdict entered on whichever count they pleased, or the court might have instructed the jury at the instance of either party. If the contract had been admitted, the case would have been different. Here the whole matter was *in pais*, and the court was right in admitting the evidence.

As to the first prayer.

The rules already presented furnish a conclusive answer to this. If the machine was placed on the boat under the agreement assumed by this prayer, it is still quite clear the plaintiffs were entitled to compensation for the time it was used by the defendants, if it was beneficial to them, although they should not have agreed on the terms.

It proceeds on the hypothesis, that the plaintiffs would place the machine on the boat at their own expense, and for their own benefit; and if, on trial, it should be approved of by the defendants, and they should desire to purchase it, the terms of such purchase should be afterwards determined on between the parties; but if it should not be approved, or the terms proposed by said Cook for the use of the same should be such that defendants could not accede thereto, plaintiffs should remove it at their own expense, and replace the boat in as good condition as before. This is, however, but a partial statement of the evidence. It was approved of. The defendants conferred with Cook about the price, and he said they should have the use of the machine on as favorable terms as the same had been disposed of to the Augusta, or any other steamboat; but he did not state what those terms were.

The Augusta was a boat running in the same waters; the Osceola was another. The means of ascertaining the price were within the reach of defendants. The defendants understood this to be a distinct and binding offer. They did not reject it; but continued to use the machine after these terms were proposed.

It was a contract of sale or use. The plaintiffs had done their part, executed the contract, and the payment was to be made in money. They might resort to the common count. See cases under the first rule above. They gave evidence to

show the terms on which the Osceola had it. This was the measure of the sum which they could recover on the common count. It was competent for defendants to have proved that the terms with the Augusta were more favorable if they had chosen to do so. But the court was asked to say they could not recover at all in this action, rejecting the second count altogether.

As to the fourth exception.

The instruction assumes that the defendants' president must have been authorized by a board or quorum of the directors, or his act sanctioned and approved by such board or quorum, to make it binding on the company.

It admits the making of the contract. It was a contract eminently beneficial to the company, saving more than one third of the fuel. It was made by the general agent of the company in the ordinary discharge of his duties. They were bound to know its terms. If they chose to avail themselves of the benefits without inquiring into those terms, or if they believed, from the report of their said agent, that he had made a different contract, they are still bound by the contract which he did make. Bank of Columbia v. Patterson's Adm., 7 Cranch, 299; Mechanics' Bank v. Bank of Columbia, 5 Wheat. 326; Fleckner v. Bank of U. States, 8 Wheat. 338; Bank of U. States v. Dandridge, 12 Wheat. 64; Bank of Metropolis v. Guttschlick, 14 Pet. 27.

Mr. Justice GRIER delivered the opinion of the court.

Sickles and Cook, plaintiffs below, filed their declaration in assumpsit, containing two counts.

The first sets forth a parol contract made with William Gunton, president of the steamboat company and general agent thereof, in which it was agreed that the plaintiffs should construct and place on board the steamboat Columbia a certain machine invented by Sickles, called a "cut-off," at their own cost; that the machine should be tried, and, if it was found to produce any saving of fuel, that the cost of putting it in operation, not exceeding two hundred and fifty dollars, should be first paid out of the savings of fuel effected by the machine; that the machine should be used by the defendants during the continuance of the patent, if the boat should last so long; and after paying for its erection, the savings caused thereby in the consumption of fuel should be divided between the plaintiffs and defendants in the proportion of one fourth to defendants and three fourths to plaintiffs. The mode of ascertaining the amount of saving is specially set forth, — and the plaintiffs aver that they erected their cut-off on said steamboat at the

37 *

cost of $242, on the 9th of November, 1844, and·that it was afterwards ascertained in the mode agreed upon, that the saving of fuel caused by using plaintiffs' cut-off exceeded that of the "throttle cut-off," before used by defendants, by $34\frac{175}{190}$ per cent.; and that the amount saved over and above the price of erection when this suit was brought was $2,500. For the amount of the $242, and three fourths of the latter sum, this suit is brought.

There is a second count, for putting the machine on the boat at request of defendants, with a *quantum meruit.*

On the trial of the cause below, evidence was given tending to prove the special contract as laid in the first count, and that the experiment to test the value had been made in the manner agreed upon, with the result as stated in the declaration. The plaintiffs then offered to show experiments made by practical engineers on other boats, and the result thereof, with the opinion of the said engineers as to the value of their cut-off. This evidence was objected to, and its admission is the subject of the first bill of exceptions, sealed at request of defendants.

The objection to this evidence is, that the mode of ascertaining the value of plaintiffs' cut-off is specially stated in the declaration, and no other could be resorted to. But we think that, even if there were no other count in the declaration than that on the special contract, this objection cannot be sustained. The plaintiffs had given in evidence the experiment made in pursuance of their alleged agreement, and as this testimony tended only to corroborate it, and not to contradict it, or enlarge the claim of the plaintiffs beyond that ascertained by the experiment made by the parties, it cannot be said to be irrelevant or incompetent; at most, it could only be said to be superfluous. But assuming that it was irrelevant on the first count, it is clearly not so as regards the common count on a *quantum meruit.* The plaintiffs had an undoubted right to give evidence which might enable them to recover on the latter count, in case the defendants should succeed in establishing their plea of non-assumpsit as to the first. In this view of the case, the competency and relevancy of the testimony cannot be doubted.

To support the issue on their part, the defendants then called William Gunton, the late president of the company, who wholly denied that he made such a contract as that declared on by plaintiffs, and stated that plaintiffs expressed to him a desire to bring their "cut-off" to the favorable notice of the government, with a view of introducing it on board the national steamships. That he gave them leave to erect their machine on the boat at their own expense, and agreed that, if, on trial, the machine should be approved by the defendants, they would

purchase it, on terms to be afterwards agreed upon; but if not approved, or the terms of purchase offered by plaintiffs should be such as defendants would not accept, then plaintiffs should have leave to take off their machine at their own expense. That afterwards, when the plaintiffs' terms were asked, they said defendants should have the machine on the same terms as the steamboat Augusta and other boats, but would not then or at any other time state definitely what those terms were, or what price the Augusta had given, or the plaintiffs would be willing to take, so that it could be laid before the company for their approval. That defendants had never refused permission to plaintiffs to take away the machine from the boat, if they so desired to do. Certain letters were also given in evidence, the contents of which it is not necessary to state in order to understand the instructions given to the jury which are now the subject of exception.

Four several bills of exception have been taken to the refusal of the court to give four items of instruction to the jury. Two of these only are relied on here. The first may be briefly stated thus:— That if the jury believed the testimony of William Gunton, and that the contract between the parties was such as he stated, defendants were entitled to a verdict. This instruction was refused by a divided court.

We are of opinion that the defendants were clearly entitled to have this instruction given to the jury, as the testimony, if believed by them, fully supported the defendants' plea, and showed that the plaintiffs were not entitled to recover on either count in their declaration. They could not recover on the first count, for this testimony showed that there was no such contract between the parties as that set forth in it; nor on the count on a *quantum meruit*, for the use of the machine, for that would be a repudiation of the contract as proved. If the plaintiffs put their machine on board of defendants' boat for the purpose of experiment, on an agreement that defendants should pay for it if on trial they approved it, and were willing to give the price asked, otherwise the plaintiffs should have leave to take it away, — it certainly needs no argument to show, that, without stating their terms, or offering to fulfil their contract by a sale of the machine, the plaintiffs cannot repudiate it and sue for the use of the machine. This would be a palpable fraud on the defendants.

The only other exception urged to the charge of the court below is in the answer given by the court to the fourth instruction prayed; which is as follows:—

" If, from the evidence, the jury shall find that William Gunton, the president of the defendants' company, and acting as

their general agent, made with the plaintiffs the contract set out in the first count of the said declaration, and that the plaintiffs, under the said contract, put the said machine on the defendants' boat, and the same was used by the defendants at the time and times mentioned in the said count, and that the same was beneficial to the defendants, then the plaintiffs are entitled to recover on the said first count, notwithstanding the jury shall find that the terms of the said contract were not communicated to the defendants, and the said William Gunton reported to the said defendants a different contract."

We find no fault with this instruction, so far as it states the liability of defendants for the acts of Gunton as their general agent, whether he reported his agreement to the defendants or not. If he was their general agent, and had power to make such contract, his failure to communicate it to his principals cannot affect the case. But we are of opinion, that the court erred in stating that the plaintiffs had a right to recover on their special count, if the machine was useful to the defendants, without regarding the stipulations of said contract as laid and proved, and the fact that the plaintiffs had refused to rescind it, and had expressed their determination to adhere to it and " to bring an action *every week* to recover the amount of saving on the terms of the contract."

If the plaintiffs had complied with the request of the president of the company, in a letter addressed to them on the 14th of April, 1841, after the dispute about the nature of the contract had arisen, and taken their cut-off from the boat, and thus put an end to the contract, the instructions given by the court would have been undoubtedly correct. But as the record shows that the plaintiffs have refused to annul the contract, a very important question arises, — whether this action and five hundred others, which the plaintiffs have expressed their determination to continue to institute, can be supported on this *one* contract. By the contract as proved and declared on, the defendants, after the machine has been erected on their boat, are to continue to use it "during the continuance of the patent," if the boat should last so long. The compensation to be paid by the defendants is to be measured by the amount of saving of fuel which the machine shall effect. The mode of ascertaining this saving is pointed out, and the ratio in which it is to be divided. The first $ 250 saved are all to go to the plaintiffs, and three fourths of all the balance. But the c ntract is wholly silent as to the time when any account shall be rendered or payments made. The defendants have not agreed to pay by the trip, or settle their account every day, or week, or year; or at the end of $27\frac{1}{2}$ weeks, the time for which this suit is

instituted. The agreement on the part of the plaintiffs is, that the defendants shall use their machine for a certain time, in consideration of which defendants are to pay a certain sum of money. It is true, the exact sum is not stated; but the mode of rendering it certain is fully set forth. It is one entire contract, which cannot be divided into a thousand, as the plaintiffs imagine. If the defendants had agreed to pay by instalments at the end of every week, or twenty-seven weeks, doubtless the plaintiffs could have sustained an action for the breach of each promise, as the breaches successively occurred. But it is a well-settled principle of law, that, " unless there be some express stipulation to the contrary, whenever an entire sum is to be paid for the entire work, the performance or service is a condition precedent; being one consideration and one debt, it cannot be divided." It was error, therefore, to instruct the jury that the plaintiffs were entitled to recover on the first count, if their machine was used by the defendants, and was beneficial to them, without regard to the fact of the rescission, or continuance, or fulfilment, of the contract on the part of the plaintiffs.

Whether, if there had been a count in the declaration for the $ 242, and the jury had believed that the defendants had agreed to pay it as soon as it was earned, the plaintiffs might not recover to that amount, or whether such a construction could be put on the contract as proved, are questions not before us, and on which we therefore give no opinion.

The judgment of the Circuit Court must, therefore, be reversed.

### *Order.*

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the County of Washington, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, reversed, with costs, and that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions to award a *venire facias de novo.*