### LUMLEY INGLEDEW *vs.* NORTHERN RAILROAD.

In an action by a consignee of goods against a carrier for damages to the goods by delay in delivering them, the measure of damages is the diminution, occasioned by such delay in the market value of the goods at the place of delivery.

In an action by a consignee of goods against a carrier for failing to deliver them, the fact that the plaintiff, after the goods should have been delivered, made inquiries for them of the carrier, is admissible in evidence of their having been lost.

In an action against a carrier for failing to deliver goods, the admission of evidence that his servant requested the person from whom he received them to make out a bill of the goods "said to have been lost" is no ground for granting the carrier a new trial.

Upon the question whether the weather, at a certain time and place, was cold enough to freeze ink, evidence that it was not then and there cold enough to freeze apples is inadmissible.

An expert, who has testified to the state of the weather at a certain time and place, and to his opinion of the effect of such weather upon a certain substance, as deduced from many experiments, cannot be asked in his examination in chief as to the details of each experiment.

A consignee cannot recover of a carrier for his loss of time in waiting for goods which the latter has unreasonably delayed to deliver.

THIS case was tried in the court of common pleas at September term 1853, before *Wells*, C. J., who, after verdict for the plaintiff, signed a bill of exceptions, tendered by the defendants, the arguments and decision upon which were made at October term 1853, and the substance of which is stated in the opinion.

*B. Dean*, for the defendants.

*B. F. Butler*, for the plaintiff.

THOMAS, J.    This is an action to recover damages for the loss of certain boxes of ink, alleged to have been caused by the negligence of the defendants in not carrying them from Lowell to West Lebanon, N. H., with reasonable dispatch; the boxes not arriving at the latter place in the usual course of transportation.

The plaintiff directed a servant of the defendant corporation to place certain directions on the boxes, when they should arrive at West Lebanon, and forward them to Keene, N. H. by another railroad.    The ink, arriving a few days afterwards, was immediately sent to Keene, as directed.    We do not understand that

the writ charges that the defendants assumed any duty in rela-
tion to the delivery of the boxes to another carrier. Their duty,
as carriers, terminated with the arrival of the goods and their
readiness for delivery.

The ink arrived at Keene in due time, and became frozen
about the time of its arrival. It was, however, in good condi-
tion when sent from West Lebanon, and no weather cold enough
to freeze it had then occurred.

" The defendants requested the court to rule that such delivery
was a performance of the contract by the defendants, so as to
free them from all damage afterwards occurring by freezing or
otherwise.

" The court declined so to instruct the jury ; but did instruct
them that the defendants were liable for all damage that could
be traced to the delay of the defendants, though said damage
occurred after the delivery aforesaid to the railroad to be sent
to Keene, provided the plaintiff satisfied the jury that he used
reasonable care in taking care of said ink, and the loss or dam-
age was occasioned by the unnecessary delay of the defendants
in transporting the same over their road."

The learned judge, in instructing the jury that the defendants
were liable for all damages that could be traced to the delay of
the defendants, though said damages occurred after the delivery
to the railroad to be sent to Keene, laid down a rule broad and
indefinite, and looking, apparently, to remote as well as proximate
consequences. Nor does the subsequent language tend very
strongly to limit or restrain this rule. It seems to be saying, in
effect, that if the jury were satisfied the ink would not have
been frozen on its way to Keene if the defendants had sent it
in due time to West Lebanon, and due care was taken of it on
its way to Keene, the defendants would be liable.

Upon the bill of exceptions it does not appear that the de-
fendants were charged with any duty in forwarding the ink to
Keene, or that the officers of the defendant corporation, having
charge of the transportation, knew of its destination beyond
their own line. The declaration alleges only neglect and delay
in carrying it from Lowell to West Lebanon ; and the duty of

the defendants, as carriers, terminated with the arrival of the ink and its readiness for delivery at the latter place.

The extent of the duty of the carrier is the measure and limit of his liability. For any injury the plaintiff sustained in this property, by reason of the negligence and delay of the defendants in such transportation, the defendants would be liable.

The proposition stated by the counsel for the plaintiff, that a common carrier is liable for all the damages which are the consequences of his negligence, is a sound proposition, rightly understood. He is liable for all damages which the law sees to be the consequences. But the law looks to and regards the proximate, and not the remote consequences—the direct proximate consequence of the negligence, and not remote results that may be traced to it by a chain of causes, however sound may be each successive link. It may not always be easy to draw the line, and say what is proximate and what remote; but this renders it none the less obligatory to adhere to it when it can be discerned. In cases of this kind, the rule of damages seems to be the diminution in value of the goods, as articles of merchandise, at the time of their arrival, by reason of the delay. What were the goods worth the less, at the time of their arrival, than they would have been if they had come without delay, or in the usual course of transportation? The difference, in some cases, may be very slight, scarcely appreciable; in others, as the case of fruit or other perishable articles on their way to market, it may cover the entire value; and this even, it is plain, before decay actually commences, if there was no market at the place of delivery, and they must perish before they could reach one.

Applying this rule to the case at bar, the inquiry would be, what was this ink worth the less, on its arrival at West Lebanon, by reason of the delay, as an article of merchandise? The defendants not being charged with the duty of forwarding it, the plaintiff himself, or through his servant or agent, must exercise a reasonable discretion in regard to it. If it could have been sold for its fair value at West Lebanon, the injury sustained by the plaintiff would be slight. If, on the other hand,

there was no market for it there, and the best thing that could be done, under all the facts of the case, was to forward it, taking the risk, how much less was it worth for that purpose, than it would have been had it arrived in due season at the place of delivery?                                      *Exceptions sustained.*

A new trial was had in the court of common pleas at December term 1855, before *Sanger*, J., when the plaintiff was permitted, against the objection of the defendants, to prove that after the time when the ink, which was in glass bottles, packed in boxes, should have arrived, he inquired for the ink, at Lowell, of the clerk of the manufacturer who had sent it to him, and of the freight agent of the Nashua and Lowell Railroad, over whose road the ink should have passed to Nashua, N. H., thence by the Concord Railroad to Concord, and thence to West Lebanon on the northern road; cars of all which roads came to Lowell to deliver and receive freight.

The plaintiff also called Abial Rolfe, the freight agent of the Nashua and Lowell Railroad at Lowell, who testified, without objection, that he acted as agent of the defendants for receiving and forwarding freight, that he received and forwarded this ink, and, after he understood that the ink was lost, had a conversation with J. B. French, the president of the defendants; and after that conversation, a son of said president, who acted as clerk of the defendants in their freight department, and signed the name for the master of transportation, called on him with regard to this claim; that said clerk occasionally brought messages, verbal and written, to the witness, from the authorities of the defendants, upon which he had acted. The plaintiff then proposed to ask the witness, " What did the said French say to you, if anything, when he called on you in regard to the said claim ? " The defendants objected, and contended that said French could not make declarations to bind the road. But the court permitted the question to be put; and the witness answered, " Said French requested me to find the plaintiff, and make out a bill of ink which was said to be lost or frozen."

The defendants called as a witness their freight agent at

8*

West Lebanon, who testified that the ink arrived there and was sent to Keene on the 29th of October 1851, and that he should think that no weather had then occurred, cold enough to freeze ink, or did occur until the 8th of November 1851. The defendants then offered to prove, by this witness, that apples exposed to the weather had not frozen at Lebanon before said 8th of November, in order to show that ink could not have frozen before that time. But the court refused to admit the testimony.

The defendants called Ira Young, a professor in Dartmouth College, who testified that no weather occurred before said 8th of November, cold enough to freeze said ink, or even water; that he kept a register of the temperature of the weather. He also testified as to the degree of cold that would be required to freeze water or ink in glass bottles; and that he had made various experiments to ascertain the degree of cold at which water or said ink would freeze. The defendants offered to prove the details and results of each of these experiments. The court refused to admit the testimony; but permitted the witness to state the opinion which he had formed from the result of the experiments as a whole.

Upon the question of damages, the court ruled " that if the ink was lost or depreciated in value by the fault of the defendants, then the plaintiff could recover therefor; and, in addition to that, he might receive a reasonable compensation for the loss of time he necessarily incurred in waiting solely for said ink at West Lebanon." The jury returned a verdict for the plaintiff, assessing separately the damages for the plaintiff's loss of time. The defendants alleged exceptions.

*Dean*, for the defendants, in support of the admissibility of Young's experiments, cited *Washington, Alexandria & Georgetown Steam Packet Co.* v. *Sickles*, 10 How. 438; *Bradford* v. *Boylston Fire & Marine Ins. Co.* 11 Pick. 162; 1 Greenl. Ev. § 440; 2 Stark. Ev. (4th Amer. ed.) 381 & seq.

*Butler*, for the plaintiff.

THOMAS, J. 1. That the plaintiff called, and made inquiries for the ink, was admissible as a fact tending to show the loss of the property.

2. The testimony of Rolfe, that French, the clerk of the defendants, called upon him, and requested him to find the plaintiff, and make out a bill of the ink which was said to be frozen or lost, would, as an act done by the servants of the defendants in the course of their business, be admissible. If rejected, it should have been for its immateriality; for it certainly contains no admission that the ink was lost or frozen.

3. The evidence that other particular substances did not freeze was rightly excluded. It opened collateral issues of inquiry, as the comparison of one article with the other, and the different degrees of temperature at which they froze respectively. The defendants were permitted to give evidence as to the state of the weather, by the usual tests.

4. The details of the different experiments of the witness Professor Young were rightly excluded. He was permitted to state his opinion as to the result of such experiments. Upon cross-examination, to test his accuracy, the court would doubtless open, to some extent, the inquiry as to the nature and character of the tests used; but even this would be regulated by its discretion.

5. The court erred in instructing the jury that the plaintiff might recover for loss of time in waiting for the ink. Such damage is not direct, but remote and contingent. On this point alone the exceptions are sustained. Upon the remission of the damages for delay, which appear to have been separately assessed, judgment will be entered on the verdict.